IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 1:23CR79-1 |
| JAVAR LAJUAN CLARK | : | |

The Grand Jury charges:

Background

At all times relevant hereto:

A. JAVAR LAJUAN CLARK was a resident of Forsyth, North Carolina, within the Middle District of North Carolina.

B. An employer identification number ("EIN") was a nine-digit number assigned by the Internal Revenue Service ("IRS") and was used to identify taxpayers who were required to file certain business tax returns.

C. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

D. As part of that effort, the SBA enabled and provided loans through banks, credit unions, and other lenders that had government-backed guarantees. The SBA also provided direct loans.

E. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 to provide emergency financial assistance to Americans suffering negative economic effects caused by the COVID-19 pandemic.

F. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

G. The CARES Act authorized the SBA to provide loans ("EIDL loans") of up to $2 million to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL ("EIDL advances"). The amount of the EIDL advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

H. In order to obtain an EIDL loan and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the

2

12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was that 12-month period preceding January 31, 2020. The business must have been operating as of February 1, 2020 to qualify for a loan. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge, and agree in the Loan Authorization and Agreement that EIDL funds would be used solely to alleviate economic injury caused by the disaster.

I. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. EIDL loan and advance funds were issued directly by the SBA.

J. Pursuant to the provisions governing the EIDL program, loan proceeds could only be used on certain permissible expenses. More specifically, the business could use EIDL loans and advances to pay fixed debts of the business, payroll of the business, accounts payable of the business, and other bills of the business that could have been paid had the COVID-19 disaster not occurred.

## The Scheme and Artifice

1. From in or about May 2020, continuing up to and including in or about July 2020, the exact dates to the Grand Jurors unknown, in the County of Forsyth, in the Middle District of North Carolina, and elsewhere, JAVAR LAJUAN CLARK devised and intended to devise a scheme to unlawfully enrich himself by submitting, and causing to be submitted, a fraudulent loan application to the SBA in order to obtain funds through the EIDL program.

2. It was a part of the scheme and artifice to defraud that on or about May 21, 2020, JAVAR LAJUAN CLARK submitted, or caused to be submitted, an application for an EIN through the IRS online portal. CLARK used this EIN to apply for funds from the SBA on behalf of "Handy Works by J Clark."

3. It was a further part of the scheme and artifice to defraud that on or about July 7, 2020, JAVAR LAJUAN CLARK submitted, or caused to be submitted, a fraudulent EIDL application to the SBA ("EIDL Application – 0765") in the name of "Handy Works By J Clark." In this application, JAVAR LAJUAN CLARK falsely affirmed that in the twelve months prior to the date of disaster, "Handy Works by J Clark" grossed $280,920 in revenues, incurred cost of goods sold of $0, and employed ten individuals, when in truth and in fact, as he then well knew, "Handy Works by J Clark" had no apparent

4

business operations during the covered time period and did not gross $280,920 in revenues.

4. As a result of the fraudulent representations, the SBA approved EIDL Application 0765 and deposited $130,400 in EIDL loan funds and $10,000 in EIDL advance funds into a personal account held in JAVAR LAJUAN CLARK's name at Winston-Salem Federal Credit Union, with a member identification ending in \*\*\*97.

5. It was a further part of the scheme and artifice to defraud that JAVAR LAJUAN CLARK falsely represented that the funds would be used for permissible business expenses, when in truth and in fact, the loan funds were used for personal expenses, including the purchase of a residential home.

## COUNT ONE
(Wire Fraud)

6. Paragraphs 1 through 5 are incorporated by reference as if fully set forth herein.

7. On or about July 21, 2020, in the Middle District of North Carolina, and elsewhere, JAVAR LAJUAN CLARK, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promise, did transmit and cause to be transmitted by

5

means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit: a wire transfer that was routed in interstate commerce from the SBA in Colorado to Clark's bank account at Winston-Salem Federal Credit Union.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Money Laundering)

8. Paragraphs 1 through 7 are incorporated by reference as if fully set forth herein.

9. On or about November 2, 2020, in the Middle District of North Carolina and elsewhere, the defendant, JAVAR LAJUAN CLARK did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, and which in fact, was derived from specified unlawful activity, namely, the defendant withdrew $22,500 in cash, which funds in fact were derived from wire fraud, as more fully set forth in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957.

6

Case 1:23-cr-00079-UA   Document 1   Filed 02/27/23   Page 6 of 9

# FORFEITURE ALLEGATION

1.  The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.  Upon conviction of one or more of the offenses charged in Counts One or Two of this Indictment, the defendant, JAVAR LAJUAN CLARK, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, or is involved in or traceable to such offense.

3.  The property to be forfeited may include, but is not limited to:

a. The real property known as 408 E. Sixteenth Street, Winston-Salem, NC 27105, with all appurtenances and improvements thereon, and described as follows:

All that certain lot or parcel of land situated in the City of Winston-Salem, Forsyth County, North Carolina and more particularly described as follows:

BEGINNING at a stake on the South side of Legerwood Street, said stake being 440 feet East of Patterson Avenue; thence Southwardly 140 feet to an iron stake on the North side of Alley, thence Westwardly along said Alley 41 feet to an iron stake; thence Northwardly on a line parallel with the first line 140 feet to a stake on the South side of Legerwood Street; thence Eastwardly with said Street 41 feet to the beginning; being part of Lot 12 on the map of Eagle Land Company Property and being the same property as that described in Deed to D.A. Bullard recorded in

Book 176, Page 154, in the Office of Register of Deeds of Forsyth County, North Carolina; and also being the same as part of Lot 12 on the Map of J.L. Patterson Property recorded in Plat Book 1, Page 45, Office of the Register of Deeds, Forsyth County, North Carolina.

b. A money judgment, in an amount to be determined, representing the value of the property subject to forfeiture as a result of such offense.

4. If any of the property described above as being subject to forfeiture as a result of any act or omission of the defendant cannot be located upon the exercise of due diligence, has been transferred or sold to or deposited with a third person, has been placed beyond the jurisdiction of the Court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), Rule 32.2, Federal Rules of Criminal Procedure, and Title 28, United States Code, Section 2461(c).

DATED: February 27, 2023
SANDRA J. HAIRSTON
United States Attorney

*Ashley E. Waid*
BY: ASHLEY E. WAID
Assistant United States Attorney

A TRUE BILL:

FOREPERSON